Good afternoon, your honors. May it please the court, my name is Lawrence Labreau and I represent the appellate, Mr. Benjamin Ortiz. I'm respectfully asking if I can reserve two rebuttals. Our position is that the lower court erred when the lower court held that the police had probable cause to enter Mr. Ortiz's home without a warrant and when they arrested him. Our position is that there was no factual predicate that justified the entry into the home, there was no emergency, there was no probable cause, and there was no probable cause or exigent circumstances. You're on a civil case, right? Yes, sir. And the allegation is that he was arrested unlawfully, right? There was no cause for the arrest. That's the appellant's contention, yes, sir. So we're not complaining here about the entry into the house. I mean, I know you're talking about it, but that's not the basis of your claim that his civil rights were violated. Oh, that's the basis of my claim. The basis of my claim is that the entry in the house was fraudulent to start with. The entry wasn't the arrest. Yes, but the entry was the predicate for the arrest, so that the question becomes, can you violate a constitutional right, come into someone's home, and then, based on whatever information you allegedly received, can you arrest that person? You're arguing that the right that was violated was his being arrested, that is, seized. Correct. At the time. Correct. And the seizure, the appellant's position is, the seizure, the formal arrest process, as labeled by the police department, may have took place outside of the apartment, but the actual seizure took place inside of the apartment. And then with the show of police authority, ordering Mr. Ortiz out of the apartment, he was arrested. So theoretically, if he chose to stay in his home based on the allegations that we've put forth in our papers, he was under the understanding that if he didn't comply with that show of authority, he could have been hurt. And we submit that a reasonable person in his position in their own home, where they haven't done anything wrong and no one's called the police, and the police force their way in and handcuff somebody, that that's a situation in and of itself that's problematic from a threshold level. The entry in the home is problematic. And then the question becomes, and this is a question that I'm quite sure that the court will decide, where you have this Fourth Amendment violation, because we submit there's no, which Fourth Amendment violation? The Fourth Amendment violation of entering the home without probable cause, extradent, circumstances, or an emergency or a consent. When you have this entry into the home, okay, once you have that entry into the home, the question becomes, is there some way or in some way, shape, or form that that entry can be cured? Because our position is that's, in effect, what the police are arguing. They're saying that you can come into a home illegally, but depending on what happens in the home, okay, that Fourth Amendment violation becomes meaningless. Now, there may be factual situations where that applies, but we submit that that's not here. All right. So let's say the police enter the home, come in, look around, all the circumstances being the same, but do not arrest your client and instead walk back out. Is that a constitutional violation? I think that's a constitutional violation for the simple fact that to enter the home, the sanctity of the home goes back a long ways, as this court knows. So just to enter the home, just we're the police and we're coming in, especially when you don't even announce you're present. Your client, I mean, essentially entering the home and looking around at most can be a search because they haven't seized your client, right? It can be a search, and our position is it's more than a search. It's a search, but it implicates the Fourth Amendment in a much broader spectrum. Because if the police can just enter into a home for any reason, just, well, we want to go into this home over here, okay, then the Fourth Amendment becomes meaningless. Now, courts have held there are exceptions. I would imagine if you're at the front door and you hear a gunshot, or if you're at the front door and a bullet comes through the door, well, that might be a different situation, but we don't have that factual predicate here. What we have is a non-criminal noise complaint that doesn't even arise to the level of a criminal offense under New York law, namely disorderly conduct. We have a situation where the noise complaint doesn't identify a particular apartment, and there are several apartments on the floor. The noise complaint doesn't identify a particular person. The noise complaint only says the 11th floor. The police officer, and based on the record, as my recollection, as I can recount the record, the police officer, when he got to the location, he never even stated that he heard noise. He just, the door opened and he walked into an apartment. You were going out and he came through. Correct, and our position is that that's not really dispositive of anything unless we have some type of factual situation. Isn't that, as you describe it, as the facts played out, at the moment the officer entered the door, an illegal search at best, but your client is not arrested. He's not taken into custody. He can answer that yes or no. He's not taken into custody. No, entering the door and looking around. That's where we're stopping. Okay. Is that a constitutional violation? I think that's a constitutional violation. That's an illegal search. Well. Yes, is the answer to that question. So, going from there, you have another constitutional violation that you're alleging, right? The illegal seizure. Correct. Okay, but you're not alleging that there was an illegal search. In the complaint, it wasn't alleged that there was an illegal search. It was alleged that there was a violation of the Fourth Amendment. Okay. All right. So, overall, everything's rolled in together? In a sense, you might say it's rolled in together, but I think this fact pattern here, even though it's a small case involving a young man staying in a housing project, I think that it presents interesting issues in and of itself, because you have a situation where you have the entry into the apartment, some allegations about what happened in the apartment, and then the ordering of the individual outside. But our position is that basically that the police didn't have the authority to go into the apartment, they didn't have the authority to seize anyone, and that they didn't have the authority to arrest Mr. Ortiz. Thank you, gentlemen. Thank you, Mr. Lebrun. You've reserved two minutes. Ms. Ejibi? Did I pronounce that correctly? Ejibi. Ejibi. Good afternoon, Your Honors, and may it please the Court. My name is Wamika Ejibi. I'm appearing on behalf of the City of New York. I'm Police Officer Gonzalez. The District Court properly granted the summary judgment on this matter because the police had probable cause to arrest the plaintiff, and the record in this case and the law in the circuit does not support plaintiff's arrest as being a patent violation. At the bare minimum, Office Gonzalez had arguable probable cause to arrest the plaintiff and is therefore entitled to qualified immunity. But before getting to those issues, I want to address plaintiff's attempt in his papers and just now on appeal to transform his claim. His complaint, which is found on page 11 to 19 of the record, the plaintiff does not make a warrantless entry claim. His claims are false arrest, false imprisonment, reckless investigation, and inadequate training and supervision. Those last two he seems to have completely just waived on appeal. Mr. Ortez is counseled. If he wanted to bring a warrantless entry claim, he needed to present it at the time of the filing or move to amend his complaint. This is important because it affects how discovery proceeds. The district court did not consider the question of whether a warrantless entry or an improper search took place. The question was solely focused. Our motion and the court's decision was focused on these questions of those five claims that I raised. At no time has the plaintiff said that the district court erred by improperly construing his complaint or the claims within it and that these issues haven't been properly joined. On that point, has there been any effort to amend the complaint to assert the claim you have described might be out there? Not that I'm aware of. Obviously, this is critically important. The district court didn't even weigh in as to whether the first entry into the home was somehow unlawful. The focus on the critical point at the time of the arrest, did the police have probable cause to make the arrest? And the court found that there was clear, undisputed evidence that the police officer did. The police officer had heard from Mr. Ortiz's cousin who said that he'd hit her. And the police officer saw on her face a scar. And that was more than sufficient to establish probable cause for assault in third degree. The law is very clear. If a police officer has credible evidence from an eyewitness or a victim, that's sufficient to establish probable cause. Just turning a moment to this question of whether entry was lawful or not. Let's, for example, say that the first entry into the apartment, the only entry, was unlawful. As set out in our brief, it's clear in these sorts of claims, these 1983 claims, that a fruit from a poisonous tree type of theory doesn't work. So even if you were to find that that first entry was not appropriate, just because the police later learned about the hitting and saw the scar, doesn't mean that the arrest was somehow unlawful. And something I'd also just like to clarify. Again, because the record here was focused on the question of arrest and imprisonment, the record doesn't have any testimony from police officers. It's just essentially the plaintiff's two different depositions. And the way that he sets out the facts, he said that the police, when they first came in, the first thing they did was that they handcuffed his other cousin who was lunging after him. So the only way that I can read what happened on that evening was that the police entered in order to change a verbal fight into a physical one. But again, this wasn't the question that was put forward by the plaintiff, and therefore we really don't have much evidence to understand exactly what the police did at the moment of entry. What we do understand is at the moment of the arrest, there was sufficient probable cause. Just turning briefly to the question of a patent violation, which the plaintiff talks a little bit here, the law in this circuit, as it currently stands, focuses on the position of the plaintiff at the time of the arrest. Is the plaintiff in their home? Are they outside of their home? This court somewhat recently in Allen said that that was the key question when you're considering a patent violation. Here it's undisputed by the parties that the arrest took place in a common area, which this court has repeatedly said is not the home, and therefore there's no patent violation. If the plaintiff wants to say, well, we think that actually by the show force, entering the apartment or asking the plaintiff to come out, that the seizure actually took place inside the home, the court's precedence here suggests that simply asking someone to come out is insufficient for a patent violation. Can I ask a question there about asking him to come out? This is a summary judgment case, am I correct? Well, I looked at the summary judgment record in this case, and I'm not sure the parties are not in some dispute over the question of whether or not Mr. Ortiz's exit of the apartment was entirely voluntary. In other words, I'm not saying that this is a is or is not a genuine issue of material fact. Under your conception of the case, with the lack of a fruit of the poisonous tree element, I can understand how you would say, well, it's not a material fact, but the question is, because it's summary judgment, can we really say that this was a request such as, oh, Mr. Ortiz, today would you like to, would you be willing to step outside? No, I looked at what, there was in fact, there was some deposition testimony, wasn't there not? And Mr. Ortiz at least subjectively believed that he had no choice but to leave the apartment. So first of all, can we really say based on this summary judgment record that it was a request? Or was it in fact something more like a directive? Or don't we know? It's one of those factual issues that we don't have agreement among the parties here. I think that there is agreement among the parties on a few objective facts. One, that the police didn't have their guns drawn. Mr. Ortiz also testifies around the language that he thinks the police officer used. He said, can you step out for a moment? And then he does testify that. Can you step out for a moment? Was that the exact words? I don't know that those were. I don't know if those were the exact words. Isn't it also true that a person, again, a lay person here, Mr. Ortiz is not a lawyer and does not know and cannot be presumed to know that he's waiving constitutional rights by stepping outside. Wouldn't a person reasonably believe that if a police officer asked you to step outside, if you did not do so, that you may be subjecting yourself to resisting arrest, for example? Yes, I think a number of people wouldn't realize their constitutional rights. And here I think the question of qualified immunity is useful and instructive. A few district courts have had cases with far more extreme facts, where the police officers have shown force through weapons, through surrounding the home. And in those instances, they said qualified immunity here is appropriate because it's not . . . We don't go to that issue, do we not, unless we decide that there was not probable cause for the arrest, right? Yes, that's correct. That's correct. And Judge Ramos didn't make a ruling, did he, on qualified immunity? Or did he? This is the Bedell case or . . . No, Judge Ramos is the district judge in this case. No, no, no. He was able to find probable cause. Probable cause. So he never reached the question of arguable probable cause . . . No, he did not. . . . or the question of qualified immunity. That's right. Thank you very much. Are there any other questions? Mr. Lebrue, you've reserved some time. Briefly, Your Honor, I'd like to address two issues. With regard to the entry into the apartment, factually it was made out in the complaint that there was a warrantless entry, we believe. The court is correct that as soon as he opened the door, that is a search. I think Judge Scalia said that in the case where if you lift up a turntable, that's a search. So, that's a search. So, we did allege a Fourth Amendment violation coming through the door. In effect, that he didn't even have a right to come through the door to start with. Next, with regard to the outside of the home argument that's been put forth, we submit that that argument has no merit . . . because that argument, based on this fact pattern, swallows the Fourth Amendment. Because, in effect, it says that, well, if you go in, for whatever reason you go in, even if you have no reason at all . . . and you find something in the home, then any problem which you come in, becomes a nullity and is irrelevant. And, that's all I have to say. I want to thank you for your time, Your Honors. Thank you for your time and for your arguments. Thank you very much. We'll reserve the decision.